Priority ✓
Send ✓
Clsd
Enter ✓
JS-5/JS-6 ✓
JS-2/JS-3

ENTERED
CLERK, U.S. DISTRICT COURT
APR 17 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
APR 17 2006
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| BROTHER RECORDS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BRADLEY S. ELLIOTT, et. al. <br><br> Defendants. | No. CV00-13314 CBM (AJWx). <br><br> ORDER DISMISSING BROTHER RECORDS' CLAIMS <br><br> THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

The matters before the Court, the Honorable Consuelo B. Marshall, United States District Judge, presiding, are: (1) the parties' responses to the Court's OSC; (2) Defendant Morgan's Motion for Judgment Against Brother Records, Inc. ("BRI"), or, in the Alternative, for a Trial on Laches; (3) Defendant Morgan's Motion for Clarification, or in the Alternative, Modification of the Court's 2004 Order; and (4) Defendant Morgan's Motion to Preserve Evidence.

## JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1338(a) and 2201(a).

## BACKGROUND & PROCEDURAL HISTORY

This action arises out of a dispute over the ownership of, and the right to exploit, certain recordings made by The Beach Boys in 1962. *See* June 16, 2004 Order at 4:10-5:13. On or around February 5, 2002, the parties filed cross-motions for summary judgment. On June 16, 2004, the Court issued an Order

Regarding the Motions for Summary Judgment. With regard to the 1962 Recordings, the Court held that, even though Morgan had been exploiting the recordings for forty years with the knowledge of The Beach Boys and BRI, Morgan nonetheless did not have an ownership interest and had been infringing Plaintiff's trademark. June 16, 2004 Order at 8:15-16, 8:21-9:2. However, the Court held that BRI's federal trademark claim was barred by laches. *Id.* at 9:4-5. With regard to the 2000 Out-takes, the Court held that their exploitation would constitute infringement and that laches would not bar any claim. *Id.* at 9:10-18.[1]

The Court's June 16, 2004 Order, and its impact on the remaining claims, has been the subject of some dispute between the parties and, on December 2, 2005, the parties appeared before the Court for a status conference to discuss whether there remained any issues to resolve. After considering the parties' argument and interpretation of the Court's June 16, 2004 Order, the Court issued an OSC inviting the parties to file responses to five questions posed by the Court. Dec. 7, 2005 Order. The parties timely filed their responses to the Court's OSC. Subsequently, Morgan filed his Motion for Judgment Against BRI or, in the Alternative, for a Trial on Laches; his Motion for Clarification, or in the Alternative, Modification of the Court's 2004 Order; and his Motion to Preserve Evidence.

///
///
///
///

---

[1] The Court did not rule as to Plaintiff's remaining claims because the parties either did not address or did not provide evidence in regards to those claims. *Id.* at 7 n.3, 9:21-23. However, the Court resolved all of the claims asserted by Morgan in the consolidated case. June 16, 2004 Order at 4:20-22, 9:6-8.

- 2 -

# DISCUSSION

This order discusses and resolves the issues identified in the Court's OSC. The Court's conclusion that laches operates to bar BRI's remaining claims also resolves Morgan's pending motions.[2]

## I. Whether Any Claims Remain to Be Resolved As to the 2000 Out-takes

The parties agree that, in light of the rescinding of the licensing agreement between Morgan and Elliott, the return of the licensing fee to Elliott, and the return of the 2000 Out-takes to Morgan, no claims remain to be resolved as to the 2000 Out-takes.[3] While BRI concedes that the lack of exploitation of the Out-takes means that it is not entitled to any damages, it nonetheless asserts that it is entitled to a permanent injunction against the future use of the Out-takes, but offers no explanation. There is no evidence that the Out-takes were ever exploited, the agreement has been rescinded, and the money and recordings were returned upon the Court's June 16, 2004 Order. Therefore, there is no basis or need for injunctive relief.

## II. Whether Any Issues Remain in Light of the June 16, 2004 Order

The first three issues raised by the Court's OSC are all intertwined, as were the parties' responses to the OSC. The core issue is whether the Court's June 16, 2004 holding that BRI was guilty of laches with regard to its claim of federal trademark infringement bars its other claims. If so, then Morgan is entitled to judgment. Accordingly, the Court considers the applicability of laches to the facts presented here.

---

[2] Morgan also raises a standing issue in his response to the Court's OSC and in his various motions. In light of the Ninth Circuit's decision in *Brother Records, Inc. v. Jardine*, which concludes that BRI was incorporated by The Beach Boys to hold and administer the intellectual property rights for The Beach Boys, the Court finds that BRI has standing. 318 F.3d 900, 901 (9th Cir. 2003).

[3] The sole basis for the claim against Elliott is the 2000 Out-takes.

### A. Laches

Laches is an equitable time limitation on a party's right to bring a suit. *Boone v. Mechanical Specialties Co.*, 609 F.2d 956, 958 (9th Cir. 1979). In order to establish laches as a defense, a defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself. *Kling v. Hallmark Cards*, 225 F.3d 1030, 1036 (9th Cir. 2000). Delay is measured from the time that a plaintiff knew or should have known about the defendant's conduct. *Id.* A finding of laches will operate to bar the prosecution of a claim, notwithstanding a court's finding that plaintiff has stated a valid claim.

### 1. Delay

The presumptive applicability of laches turns on whether the limitations period for the analogous action at law has expired. If the claim is filed after the analogous limitations period has expired, the presumption is that laches bars suit. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837 (9th Cir. 2002). Where some acts of infringement occurred long ago, the presumption of laches applies even though some acts of infringement are more recent. McCarthy on Trademarks and Unfair Competition §31.23; *Jarrow*, 304 F.3d at 829.

The relevant statutes of limitation for the analogous actions at law have long since passed. The statute of limitations is two years for right to publicity, *see Cusano v. Klein*, 264 F.3d 936, 950 (9th Cir. 2001) and Cal. Code Civ. Proc. § 339, and four years for unfair competition. *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 942 n.11 (C.D. Cal. 2004)(J. Matz); Cal. Code Civ. Proc. §§ 337, 343. Morgan, since the 1960s, "has marketed, sold, and licensed the 1962 Recordings without objection from The Beach Boys or Brother Records." June 16, 2004 Order at 3:20-21. Almost all of the alleged acts that would form the basis for BRI's remaining claims fall outside the statute of limitations.

///

Given the presumption of laches here, the Court considers whether there has been the requisite unreasonable delay, an analysis consisting of two steps. *Jarrow*, 304 F.3d at 838; *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 952-55 (9th Cir. 2001). First, a court should assess the length of delay. Second, the court should inquire whether the delay was reasonable.

### a.  Length of Delay

The length of delay here was extensive, lasting more than forty years despite The Beach Boys and BRI being on notice of Morgan's conduct. June 16, 2004 Order at 3:20-21. The time period, for purposes of calculating delay, began when BRI and The Beach Boys knew or should have known of the offending conduct[4] and ended only when the lawsuit was filed in 2000. *Danjaq*, 263 F.3d at 953. Accordingly, at a minimum, the period of delay was a little less than forty years. *See id.* at 952.

### b.  Reasonableness of Delay

With regard to the reasonableness of any delay, this factor is considered in light of the time allotted by the analogous limitations period. *Jarrow*, 304 F.3d at 838. The forty-year delay in filing the suit was far beyond the statute of limitations, and the existence of more recent examples of infringement does not prevent the application of laches. *Danjaq*, 263 F.3d at 953. Where more recent examples of infringing conduct are identical to the older examples, the two are treated as identical for purposes of laches. *Id.* A contrary application "would effectively swallow the rule of laches, and render it a spineless defense." *Id.* at 953-54. BRI argues that they were not aware of the infringement, that The Beach Boys believed Capitol Records to have the only claim to the recordings, and that

---

[4] The Court's June 16, 2004 Order found that an April 1962 letter put The Beach Boys and BRI on notice that Morgan claimed rights in the 1962 Recordings, thus starting the clock to run on the delay.

royalty payments issued by Morgan did not put it on notice of Morgan's exploitation. The Court has already resolved the issue of when BRI and The Beach Boys were on notice.[5]

### 2. Prejudice

In addition to delay, for laches to bar BRI's claims, Morgan must also establish that he would suffer prejudice. *Jarrow*, 304 F.3d at 839. The bare fact of delay will create a rebuttable presumption of prejudice. *Boone*, 609 F.2d at 958. Laches is meant to be an equitable defense, to combat the prejudice that would otherwise result to the defendant. *Jackson v. Axton*, 25 F.3d 884, 887, 889 (9th Cir. 1994); *Danjaq*, 263 F.3d at 955. A defendant may establish either: (1) evidentiary prejudice, related to lost, stale, or degraded evidence or witnesses whose memories have faded or who have died; or (2) expectations-based prejudice, where a defendant took actions it would not have had plaintiff brought suit promptly. *Danjaq*, 263 F.3d at 955. Morgan has established both forms of prejudice.

#### a. Evidentiary Prejudice

Various witnesses, whose testimony Morgan states is critical, have long since passed away. Hite and Dorinda Morgan, who initially entered into the agreement with The Beach Boys, obtained the masters of the 1962 recordings, and marketed, sold and licensed the recordings, passed away on October 4, 1974, and February 23, 1986, respectively. Hite and Dorinda Morgan owned Deck

---

[5] In addition to the April 1962 letter, the Court found that notice arose from the Morgans obtaining judgments and injunctions against infringers of the 1962 Recordings. June 16, 2004 Order at 3:21-23. On at least one occasion, BRI executives testified in such a lawsuit. In *Morgan v. Saraceno*, a 1997 California Superior Court case, Morgan sued because of allegedly infringing use of the 1962 recordings. Case No. BC093327. In that case, which was resolved in favor of Morgan, BRI president Elliott Lott was called as a witness and testified that he had known for a number of years that the Morgan's claimed ownership of certain recordings.

1  Records and were the ones who initially worked with The Beach Boys. Their son,
2  Bruce Morgan, the current owner of Deck Records, is now in his late seventies,
3  had a four-way heart bypass operation in 1995, presently has chronic obstructive
4  pulmonary disease, and generally is in very poor health.
5       In addition to these three key witnesses, Morgan has submitted a
6  declaration identifying various other principal witnesses whose memories have
7  faded as they've grown older. *See* Decl. of Allen Hyman, ¶¶ 2-6 (discussing Val
8  Poliuto, 69, principal witness; Al Schlesinger, in his 80s, attorney for the
9  Morgans in the 1950s and 1960s, as well as for The Beach Boys in the 1960s; and
10 Dino Lappis, in his mid-70s, recording engineer who participated in the
11 Morgan/Beach Boys recording sessions). In addition to the loss of witnesses and
12 the fading of their memories, Morgan asserts that, over the passage of forty years,
13 critical evidence has been lost. The death of witnesses, fading of memories and
14 waning health of others, and the loss of evidence severely prejudices Morgan as a
15 result of BRI's forty-year failure to initiate suit. *Danjaq*, 263 F.3d at 955-56.
16 Plaintiff argues that many of these witnesses are no longer important in light of
17 the Court's finding that Morgan did not own the 1962 Recordings. However,
18 these witnesses testimony would still be critical to defenses asserted by Morgan
19 and to establishing underlying facts. Additionally, the availability of some
20 witnesses is not the issue, it is whether the absence of other witnesses with
21 prejudice Defendant, and the Court finds that it will. *See id.* at 956.
22       **b.     Expectations-based Prejudice**
23       The Court found, in its June 16, 2004 order, that the Morgans made
24 significant investments in the recordings, without objection from anyone. The
25 Court further found that allowing BRI to proceed with its claims now would be
26 "inequitable by reason of laches." *Id.* at 8:21-25-9:1. The Court also noted that
27 ///
28

- 7 -

there was no dispute as to the underlying facts on which the Court based its finding of laches. *Id.* at 9:2-3.[6]

In light of the Morgans' sizeable investment of time, effort and money to develop the 1962 recordings, to market, sell, and license them, and to defend the recordings against other infringers, substantial expectations-based prejudice has been established. The Morgans took actions for the last forty years that they would not have had BRI and The Beach Boys promptly brought suit when they first became aware of Morgan's conduct over forty years ago. This is the type of expectations-based prejudice that the Ninth Circuit found to support the finding of laches in *Danjaq*. 263 F.3d at 956.

### 3. Applicability of Laches

In light of the Court's findings that there was an unreasonable delay in bringing this action and that Morgan would suffer prejudice as a result of Plaintiff's delay, the Court finds that, absent some defense, laches operates to bar Plaintiff's remaining claims.

### 4. Defense to Laches

BRI argues that willful infringement and fraudulent concealment bar the application of laches here. Willful infringement refers to conduct that occurs "with knowledge that the defendant's conduct constitutes [ ] infringement." *Danjaq*, 263 F.3d at 958. Fraudulent concealment applies where the defendant has engaged in misleading or deceptive action to mask the existence of a cause of action. Neither applies here.

Morgan was not a willful infringer during the previous forty years. While Hite Morgan believed his contract to be at a end with the signing of the Capitol contract in July 1962, the Morgans still believed that they were the owners of the

---

[6] Despite BRI's present dispute with the Court's findings more than a year and a half ago, BRI did not file a motion for reconsideration, as contemplated in L.R. 7-18.

- 8 -

1962 Recordings made before the Capitol contract. Such a belief was reasonable in light of the signed contract they had and the Morgans' significant role in assisting the Beach Boys during the infancy of the band. This Court's finding, in its June 16, 2004 Order, that the Morgans were, in fact, not the owners of the recordings, does not convert Morgan's conduct to willful infringement. Indeed, far from acting as willful infringers, the Morgans' exploitation of the recordings, and their litigation against other infringers, was in the open, with the knowledge of The Beach Boys.

The defense of fraudulent concealment is inapplicable as well for largely the same reason. The Morgans, believing themselves to be the owners of the recordings, did not seek to mislead, deceive, or conceal their actions. To the contrary, they were open about their exploitation and development of these recordings. The Morgans paid royalties sporadically and filed suit to defend against infringement. BRI points to an exchange they had with the Morgans in 1993, where a representative of the Morgans "affirmatively misrepresented . . . that Morgan 'had a 30 year old contract' that would be difficult to locate." BRI's Opp. to Morgan's Mot. for J. at 6:25 - 7:1. However, far from demonstrating fraudulent concealment, this actually support's Morgan's argument for the application of laches. The statement is consistent with a party that believed that they had an agreement in 1962 and underscores the evidentiary prejudice that has been discussed above.

Accordingly, neither willful infringement nor fraudulent concealment operate as a bar to the application of laches.

### 5. Application of Laches to Injunctive Relief

While the claims as to Morgan's past conduct is barred by laches, the issue remains as to Morgan's future use of the 1962 Recordings. Laches is generally not a bar to prospective injunctive relief. *Danjaq*, 263 F.3d at 959-60. The

reasoning is that typically a defendant will not be prejudiced by a bar on future conduct. While laches stems from the prejudice to the defendant arising out of plaintiff's past delay, such delay is unrelated to a defendant's ongoing behavior that threatens future harm. *Id.* However, laches will bar prospective injunctive relief where defendant would be forced to abandon its long-term investment. *Jarrow*, 304 F.3d at 840. Here, the Court explicitly cited the forty-year sizeable investment of time, money and effort expended by the Morgans in the development of these recordings. Morgan would be prejudiced if he was now forced to abandon his family's long standing efforts. *Id.* Further, it would be unfair for BRI to now reap the benefits of Morgan's investment after Morgan endured the attending risks. *Cf. Danjaq,* 263 F.3d at 956. Accordingly, laches also operates to prevent BRI from obtaining injunctive relief.

## CONCLUSION

Accordingly, the Court DISMISSES Plaintiff's remaining claims as barred by laches. Because all of the claims asserted by Morgan have been resolved, judgment consistent with the Court's orders will be entered.

IT IS SO ORDERED.

DATED: April 14, 2006

CONSUELO B. MARSHALL
United States District Judge